UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHARLES MADSEN and HELEN MADSEN,<br><br>          Plaintiffs,<br>     v.<br><br>RBS CITIZENS, N.A. f/k/a CITIZENS AUTOMOBILE FINANCE, INC.,<br><br>          Defendant. | 3:13-CV-00357 (CSH) |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

**I.     INTRODUCTION**

Plaintiffs Charles and Helen Madsen (hereafter collectively "Plaintiffs" or "the Madsens"), who currently reside in Texas, filed suit against Defendant RBS Citizens, N.A. (hereafter "Defendant" or "Citizens") in Connecticut state court on February 8, 2013. In their Complaint, Plaintiffs alleged that in November of 2004, they entered into an installment loan contract with Citizens in order to purchase a Chevrolet Cavalier, pursuant to which they made regular payments until August of 2006, when they paid off the remainder of the loan in full. At the end of that month, Plaintiffs state that Citizens mailed them a check for $370.00, explaining that the check was for overpayment on Plaintiffs' loan. Plaintiffs, who state they held a second loan financed through Defendant at the time, deposited the $370.00 check. Plaintiffs then received a letter from Defendant stating that the overpayment check had been issued in error. After a series of communications, during which Plaintiffs disputed Defendant's contention that they owed Citizens the original amount of the overpayment check, along with interest and fees, Plaintiffs discovered that their credit had

1

been negatively impacted. [Doc. 1-1] ¶¶1-23.

Plaintiffs then retained counsel and contacted Defendant in order to resolve the dispute. The parties settled and, pursuant to the settlement's September 12, 2007 Agreement and General Release, (hereafter "Agreement") provided by Defendant as an exhibit to Defendant's Motion to Dismiss, this settlement and accompanying Agreement "fully resolve[d] all claims, differences, and controversies between [the parties] that exist, have existed, or may exist in the future arising from or relating to the Madsens' account #2710462207 and the erroneous payment following their account pay-off." [Doc. 9-2] at 6. "In consideration for the general release" made by the Madsens in the Agreement, Defendant agreed to pay Plaintiffs $7,500.00 by check; cancel any and all claims against Plaintiffs for the $370.00 Plaintiffs received in error; instruct all consumer reporting agencies to which Defendant furnishes credit information to delete any reference to negative information regarding the Madsens' account; and cease any and all collection action regarding the erroneous $370.00 payment. *Id.* at 7. The parties "specifically agreed" within the Agreement that Defendant's $7,500.00 payment "represents the total amount Citizens has paid, is paying, or will pay in the future relating to the subject of this Agreement or the Madsens' claim for monetary damages, costs, expenses, or other injuries relating to" the Agreement. *Id.*

The Agreement also contained a clause captioned "Choice of Law, Choice of Forum, Counterparts, and Severability," which states in relevant part: "This Agreement shall be governed by the substantive law of the State of Rhode Island. Any dispute under or relating to this Agreement shall be resolved by a Court of competent jurisdiction sitting in Providence, Rhode [Island]." *Id.* at 8.

Plaintiffs aver that despite the terms contained within the Agreement, Defendants continued to negatively report the incident addressed in the Agreement to credit agencies, and that this negatively impacted Plaintiffs' ability to attain another auto loan and to refinance their home. [1-1] at ¶¶ 27-29.  Consequently Plaintiffs seek damages for Defendant's breach of the Agreement and for damages, punitive damages, costs, and reasonable attorney's fees for unfair trade practices and under the Fair Credit Reporting Act, 15 U.S.C. § 1681 and the Connecticut Creditors Collection Practices Act, C.G.S. § 36-645.  *Id.* at 7-10.[1]

This action was removed to this Court on March 14, 2013, and Defendant filed its Motion to Dismiss on March 22, 2013.  In its Motion to Dismiss, Defendant moved this Court to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(3) and Fed. R. Civ. P. 12(b)(6) or, in the alternative, to transfer to the District of Rhode Island any counts that remain in the action, pursuant to 28 U.S.C. § 1404(a).

II.     **STANDARD OF REVIEW AND LEGAL DISCUSSION**

"A Rule 12(b)(3) motion seeks dismissal for improper venue." *Johnsen, Fretty & Co., LLC v. Lands South, LLC*, 526 F.Supp.2d 307, 310 (D. Conn. 2007).  In deciding a motion to dismiss under Rule 12(b)(3), a "court must take all allegations in the complaint as true, unless contraindicated by the defendants' affidavits, and [w]hen an allegation is so challenged [a] court may examine facts outside the complaint to determine whether venue is proper." *Id.* (quoting *Indymac Mortgage Holdings, Inc. v. Reyad*, 167 F.Supp.2d 222, 237 (D. Conn. 2007)); see also *Gulf Insurance Comp. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005); *Kun Shan Ge Rui Te Tool Co.*

---

[1] The Court gives page numbers for this citation to avoid confusion, as Plaintiffs use the same paragraph numbers several times at the end of their Complaint.

*Ltd. v. Mayhew Steel Products, Inc.*, 821 F.Supp.2d 498, 500 (D. Conn. 2010).

Once the question of appropriate venue has been raised, it is a plaintiff who "bears the burden of showing that the venue is proper," *James v. Interactive Holdings, Inc.*, No. 3:10-CV-01111, 2011 WL 134068 at *1 (D. Conn. Jan. 3, 2011).  A court "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff."  *Johnsen, Fretty & Co., LLC v. Lands South, LLC*, 526 F.Supp.2d at 310 (citation omitted).  If a court finds that "venue is improper, the court may dismiss or transfer the case to any district in which the action could have originally been brought." *Id.* (citations omitted).  Whether dismissal or transfer is appropriate lies within the sound discretion of the district court.  *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993).

As discussed *supra*, the Agreement – which was signed by both Plaintiffs – contained a "Choice of Law, Choice of Forum, Counterparts, and Severability," which states: "This Agreement shall be governed by the substantive law of the State of Rhode [Island].  Any dispute under or relating to this Agreement shall be resolved by a Court of competent jurisdiction sitting in Providence, Rhode Island." [Doc. 9-2] at 8.  Defendants contend that this language constitutes a sufficient and necessary reason under Fed. R. Civ. P. 12(b)(3) for this Court to dismiss the case, or to transfer the matter to a Rhode Island court, presumably one which sits in Providence.

In order to determine whether venue is proper in cases involving, among other issues, choice of forum contract clauses, courts in this circuit have utilized a four-part inquiry: (1) whether the clause in question was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive – which is to say, whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so; (3) whether the claims and parties involved in the suit are subject to the forum selection clause; and (4) whether the resisting party has

rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for reasons such as fraud or overreaching. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007) ("If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable ... The fourth, and final, step is to ascertain whether the resisting party has rebutted [this] presumption ... by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.") (internal citations and quotation marks omitted); *see also James v. Interactive Holdings, Inc.*, 2011 WL 134068 at *1; *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007); *Mueller v. Towers, Perrin, Forster & Crosby, Inc.,* No. 3:10-CV-01093, 2011 WL 63933 at *1-2 (D. Conn. Jan. 3, 2011).

The Court notes that in light of the language of the Agreement, Plaintiffs' burden to show that this venue is appropriate is not an insubstantial one. As the Second Circuit recently stated, "where one party has shown an apparently governing forum-selection clause, the party opposing litigation in the so[-]designated forum must make a strong showing to defeat that contractual commitment." *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 822 (2d Cir. 2006); *MAK Marketing, Inc. v. Kalapos*, 620 F.Supp. 2d 295, 297 (D. Conn. 2009) (quoting same). The Court further notes that in their Opposition brief, Plaintiffs do not address several of the above-enumerated inquiries, and instead make three points in support of their opposition to Defendant's Motion at bar: (1) that the actions involved in the lawsuit are not subject to the forum selection clause because they "do not relate back to the settlement agreement"; (2) that "Connecticut is not an improper forum"; and (3) that Defendant "should not be rewarded for its bad acts with dismissal or transfer of this matter to

the District of Rhode Island when it is in substantial breach of the settlement agreement." [Doc. 10] at 2.  Nonetheless, the Court will address each of the four inquiries in turn.

### A.     Whether a Forum Selection Clause Was Reasonably Communicated

In general, a forum selection clause like the one found in the Agreement between the parties that has been "made in an arms'-length negotiation by experienced and sophisticated [parties], and absent some compelling and countervailing reason ... should be honored by the parties and enforced by the courts." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972); *Mueller v. Towers, Perrin, Forster & Crosby, Inc.,* at *2 (quoting same),  Thus "[s]o long as a plaintiff was not inappropriately induced into entering the agreement, the forum selection clause will be enforced." *Phoenix Surgicals, LLC v. Blackstone Medical, Inc.*, No. 3:10-CV-01643, 2011 WL 63992 at *2 (D. Conn. Jan. 3, 2011).  "Even if the clause was placed in a 'hidden' part of the parties' agreement, it is enforceable." *James v. Interactive Holdings, Inc.*, 2011 WL 134068 at *2 (citing *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995) and *United Rentals, Inc. v. Pruett*, 296 F.Supp.2d 220, 225-26 (D.Con. 2003)).

Plaintiffs have not made, in their Memorandum of Law in Opposition to Defendant's Motion to Dismiss or elsewhere, any argument that the Agreement's choice of forum clause was not reasonably communicated to them or to the counsel representing them in all proceedings related to the Agreement.  The Court has no other reason to believe or suspect that this was the case; therefore given that it is Plaintiffs' burden to demonstrate otherwise, the Court finds for the purpose of its Rule 12(b)(3) inquiry that the forum selection provision was reasonably communicated to Plaintiffs.

### B.     Whether the Forum Selection Clause Is Permissive or Mandatory

As the Second Circuit has explained, "[f]orum selection clauses may serve two distinct

purposes." *Phillips v. Audio Active Ltd.*, 494 F.3d at 386. The first purpose, which creates what has been termed a *permissive* forum clause, "only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate." *Id.* Put another way, a permissive forum clause allows parties "to agree on a *potential* situs for suit so as to guarantee that at least one forum will be available to hear their disputes." *Id.*; *see also, e.g., Blanco v. Blanco Indus. De Venez., S.A.*, 997 F.2d 974, 980-84 (2d Cir. 1993); *AVC Nederland B.V. v. Atrium Inv. Partnership*, 740 F.2d 148, 155 (2d Cir. 1984). The second purpose, which creates a *mandatory* forum clause, allows contacting parties "to agree in advance on a forum where any and all of their disputes *must* be brought to eliminate surprise of having to litigate in a hostile forum." *Phillips v. Audio Active Ltd.*, 494 F.3d at 386 (emphasis added). Mandatory forum clauses are "entitled to the ... presumption of enforceability." *Id.*

As the Second Circuit noted in *Phillips v. Audio Active Ltd.*, a "forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips v. Audio Active Ltd.*, 494 F.3d at 386. In that case, the forum selection clause language in question provided that "any legal proceedings that may arise out of [the contract] *are to be brought* in England." The Second Circuit agreed with the district court that such language created a mandatory forum selection clause because its "reference to a particular location, although lacking the specificity of a particular court or city," coupled with its use of "the phrase 'are to be brought'[,] establishe[d] England as an obligatory venue for proceedings within the scope of the clause." *Id.*

In contrast, a forum selection clause which merely "confer[s] jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of

exclusion." *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs. Inc.*, 22 F.3d 51, 52 (2d Cir. 2004). Thus an agreement which states only that a specific court "shall have personal jurisdiction" over related disputes between relevant parties, or that "venue shall be proper" in a specific court or courts, does not rise to the level of mandatory jurisdiction, and therefore does not exclude or preclude the possibility of proper jurisdiction elsewhere. *MAK Marketing, Inc. v. Kalapos*, 620 F.Supp. 2d at 302-3. In *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs., Inc.*, for example, the Second Circuit held that a forum selection clause which stated that "any dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts" was permissive rather than mandatory. *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs, Inc.,* 22 F.3d 51 at 53.

In its initial inquiry, therefore, the Court must turn its focus to the language of the Agreement. Here the Agreement's forum-related language provides, as discussed *supra*, that "[a]ny dispute under or relating to this Agreement *shall be resolved* by a Court of competent jurisdiction sitting in Providence, Rhode [Island]." [Doc. 9-2] at 8 (emphasis added). The Court concludes that, much like the language at issue in *Phillips v. Audio Active Ltd.*, this language – specifically the words "*[a]ny* dispute;" "*shall be resolved by*;" and "Providence, Rhode [Island]" (emphasis added) – creates a mandatory forum selection clause for the parties in the case at bar.

   **C.**   **Whether the Claims and Parties Are Subject to the Forum Selection Clause**

Plaintiffs argue in their Memorandum of Law in Opposition to Defendant's Motion to Dismiss that Defendant's "actions constitute independent violations that do not relate back to the Agreement" – and, as such, claims brought pursuant to such actions "are not required to be brought in a Rhode Island court." [Doc. 10] at 2. In support of this argument, Plaintiffs essentially argue that

the "language of the Agreement is clear that Plaintiffs release Citizens from any and all harm, whether known or unknown at the time of the Agreement, that would be due to actions that *pre-date* the Agreement." *Id.* at 3 (emphasis in original). In support of this contention, Plaintiffs cite the following language from the Recitals section of the Agreement:

> Upon the terms set forth herein, the Parties have agreed to enter into this Agreement to fully resolve all claims, differences, and controversies between them that exist, have existed, or may exist in the future arising from or relating to the Madsens' account #2710462207 and the erroneous payment following their account pay-off.

[Doc. 9-2] at 6. Plaintiffs conclude that since the "actions complained of in this action post-date the Agreement," they "are not covered by the forum selection clause and this matter should not be dismissed or transferred to Rhode Island," as at least most of the claims brought in this action "all post-date the Agreement and [thus] constitute new violations not anticipated by the Agreement." [Doc. 10] at 2-3.

The Court disagrees. It finds that the language quoted above, which Plaintiffs cite in support of their contention that this Agreement only applies to actions on the part of either party that *pre-date* the Agreement, in fact supports a contrary reading. This language makes clear that it is meant to resolve claims, differences, and controversies between Plaintiffs and Defendant which existed not only at the time the Agreement was signed and prior to the time the Agreement was signed, but also which arise subsequent to the signing of the Agreement. The language is absolutely clear on its face, addressing relevant issues "that exist, have existed, *or may exist in the future.*" [Doc. 9-2] at 6. Similarly, the Court notes that the language contained within the Agreement's General Release clause is broad, and manifestly applies to more than merely those events that pre-dated the Agreement:

> [Plaintiffs'] general release set forth in this Agreement is *intended by each of them to be as broad as they can grant*. The Madsens ... hereby release and forever discharge Citizens ...

>from any and all liability, claims, demands, damages, costs, expenses, actions, causes of action, and controversies of every kind *involving the subject matter of this Agreement or* that pre-date the execution of this Agreement.

*Id.* at 6-7 (emphasis added). The Court finally notes that, in addition, the language within Agreement's choice of forum clause, specifically that which states that such venue requirements are applicable to "[a]ny dispute under or relating to this Agreement," is more than broad enough to encompass claims which arise from actions that have taken place subsequent to the Agreement's execution. *Id.* at 8.

In short, there is nothing within the language of the Agreement that even suggests a limit of its applicability solely to those actions and events which took place prior to its execution. As well, this Court well notes that a "forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship." *MAK Marketing, Inc. v. Kalapos*, 620 F.Supp. 2d at 305 (citation omitted). Many courts have addressed the breadth with which terms such as "arising from or relating to," which appear in the Agreement, *see* [Doc. 9-2] at 6, ought to be interpreted. This Circuit has held that to "'arise out of' means 'to originate from a specified source.'" *Phillips v. Audio Active, Ltd.*, 494 F.3d at 389. It has also held that the term "relating to" is typically more broadly defined than "arising out of," and is not necessarily limited to the concept of a causal connection. *MAK Marketing, Inc. v. Kalapos*, 620 F.Supp. 2d at 305 (citing *Corgeis Ins. Co. v. American Health Found.*, 421 F.3d 123, 128-29 (2d Cir. 2001) and *Phillips v. Audio Active, Ltd.*, 494 F.3d at 389).

Given that Plaintiffs themselves argue that Defendant's post-Agreement actions are in active *breach* of the Agreement – Plaintiffs write, for example, that Defendant has "fail[ed] to comply with

essential conditions of the agreement," [Doc. 10] at 8 – and, moreover, given that even a cursory reading of the Complaint makes clear that these alleged breaches constitute or at least significantly relate to the backbone of all Plaintiffs' claims, the Court finds that Plaintiffs have not met their burden of demonstrating that the claims are not subject to either the Agreement's forum selection clause or, for that matter, to the Agreement itself.

### D.    Whether Enforcement of the Clause Would Be Unreasonable or Unjust

A party resisting a forum selection clause may rebut the mandated "presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for reasons such as fraud or overreaching." *Phillips v. Audio Active Ltd.*, 494 F.3d at 383-84; *James v. Interactive Holdings, Inc.*, 2011 WL 134068 at *1 (quoting same). In their brief opposing Defendant's Motion to Dismiss, Plaintiffs contend that Defendants "cannot fail to comply with essential conditions of the agreement to Plaintiffs' detriment and then further inconvenience [Plaintiffs] by attempting to block [Plaintiffs'] enforcement of the agreement by enforcing the forum selection provision." [Doc. 10] at 8. For the Court to "dismiss this matter based on forum," Plaintiffs argue, "would bring about an unjust result," would "provide Citizens license to breach settlement agreements going forward," and would help "Citizens to hold Plaintiffs at knife point and prevent Plaintiffs from using the Agreement as a tool to defend themselves against [Defendant's] continued breach." *Id.* at 8-9.

The Court disagrees. The explicit *purpose* of a forum selection clause within an Agreement and General Release, such as the Agreement in this matter, is to provide guidelines and restrictions

should problems arise with the parties' compliance with the terms there set forth.[2]

Other concerns raised in Plaintiffs' opposition brief regarding the inconvenience caused to Plaintiffs by this case being tried in Rhode Island, for example that Plaintiffs' counsel "is a solo attorney with a single Hartford location; that she is not a member of the District of Rhode Island nor has she ever made application to the court to appear pro hac vice; and that should this matter be transferred the undersigned will need to co-counsel with a Rhode Island attorney in order to be admitted and continue to handle this case (and travel the distance to Providence), or Plaintiffs will need to find their own Rhode Island attorney to continue their case," [Doc. 10] at 6, are inherent in the nature of the legal process, and fail entirely to demonstrate that enforcement of this clause would be unreasonable or unjust.

### III.   CONCLUSION

While sympathetic to Plaintiffs' claims, the Court finds that a dismissal without prejudice under Fed. R. Civ. P. 12(b)(3) is warranted in the case at bar, and therefore DISMISSES the matter WITHOUT PREJUDICE.

Given the Court's conclusion that venue in this District is improper, a transfer of venue under 28 U.S.C. § 1401(a) would not be appropriate. For similar reasons, the Court also does not reach issues raised under Fed. R. Civ. P. 12(b)(6), which are substantive in nature.

If Plaintiffs wish to press their claims, they may file suit in a competent court in Providence,

---

[2] The caselaw Plaintiffs cite in their opposition brief, presumably to provide support for these contentions although it is found in a separate section of Plaintiffs' brief, is inapposite as it is concerned with when the law excuses a contracting party from performing his promises under the contract in instances of total or material breach. Even assuming that Plaintiffs' allegations regarding Defendant's actions constitute such a breach, this caselaw does not address, as is the concern here, the proper means and forum for adjudication of such breach. *See* [Doc. 10] at 4-6.

Rhode Island. The dismissal of this action would not prejudice Plaintiffs in any way, since as stated that dismissal is "without prejudice."

      The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
       May 29, 2013

                                    */s/Charles S. Haight, Jr.*
                                    Charles S. Haight, Jr.
                                    Senior United States District Judge